Steve RUSSELL, et al., Plaintiffs,

v.

SPRINT CORP., et al., Defendants.

No. 02–2598–KHV.

United States District Court,
D. Kansas.

May 22, 2003.

Charles F. Speer, Payne & Jones, Chtd., Overland Park, KS, for Plaintiffs.

John W. Cowden, David M Eisenberg, Elizabeth Raines, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, for Defendants.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Steve Russell and Tom Lundberg filed this class action suit in state court against Sprint Corporation and Does 1 through 20, alleging state law claims for unfair business practices, consumer fraud, declaratory relief and injunctive relief. Defendant Sprint Spectrum LP ("Sprint") removed the case to federal court, asserting Section 332 of the Federal Communications Act of 1934, 47 U.S.C. § 332 as the basis for federal jurisdiction. This matter is before the Court on *Plaintiffs' Motion To Remand* (Doc. # 7) filed December 23, 2002 and *Defendant Sprint Spectrum LP's Motion For Leave To File Second Supplemental Memorandum In Opposition to Remand* (Doc. # 23) filed April 16, 2003. For reasons set forth below, the Court

sustains plaintiffs' motion and overrules defendant's motion.

### Standard For Removal

A civil action is removable only if plaintiffs could have originally brought the action in federal court. *See* 28 U.S.C. § 1441(a). The Court is required to remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against federal jurisdiction. *See Frederick & Warinner v. Lundgren,* 962 F.Supp. 1580, 1582 (D.Kan. 1997) (citing *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974)). The rule is inflexible and without exception, and requires a court to deny its jurisdiction in all cases where such jurisdiction does not affirmatively appear in the record. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Accordingly, the Court must strictly construe the federal removal statute. *See Fajen v. Foundation Reserve Ins. Co.,* 683 F.2d 331, 333 (10th Cir.1982). The burden is on the party requesting removal to demonstrate that the Court has jurisdiction. *See Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir.1995). The Court must resolve any doubts concerning removability in favor of remand. *See J.W. Petroleum, Inc. v. R.W. Lange,* 787 F.Supp. 975, 977 (D.Kan.1992).

### Factual And Procedural Background

On October 30, 2002, plaintiffs filed a class action petition against Sprint Corporation ("Sprint") and twenty unnamed individuals in the District Court of Wyandotte County, Kansas. Plaintiffs assert claims for violation of the Kansas Unfair Trade And Consumer Protection Act, ("KUTCPA"), K.S.A §§ 50–626 and 50–627. Plaintiffs seek restitution, punitive damages (no amount specified), declaratory relief, injunctive relief, attorneys' fees and costs. Briefly summarized, plaintiffs' state court petition alleges the following facts:

Sprint PCS, a Sprint entity, provides wireless telephone services to plaintiffs. Before March 7, 2002, Sprint charged plaintiffs $.99 per call for directory assistance calls. After March 7, 2002, Sprint charged $1.25 for directory assistance calls. Sprint's billing statements list "Additional Usage Charges" with a subhead titled "Voice Other Usage Charges (see explanation on back of pg. 1)." The explanation on the back of page 1 states: "helpful information about your Invoice and Sprint PCS Service: 'Other Charges'— Charges that are not included in the Monthly Service Charges section will appear here if applicable." Plaintiffs allege that Sprint deliberately uses this vague language to describe the directory assistance calls to minimize the likelihood that customers will discover (1) the fact that Sprint charges for directory assistance and (2) the amount which Sprint charges. The billing statement does not set forth the rate for directory assistance calls. Plaintiffs allege that Sprint's billing practices regarding directory assistance calls constitute consumer fraud and violate the KUTCPA. Plaintiffs seek restitution of the amount that Sprint has collected for directory assistance and declaratory and injunctive relief regarding the billing language for directory assistance charges.

After plaintiffs filed suit in state court, Sprint filed a notice of removal, asserting that this Court has federal removal jurisdiction because (1) the Federal Communications Act of 1934 ("FCA") as amended, particularly 47 U.S.C. § 332, preempts plaintiffs' claims, and (2) plaintiffs' claims raise a substantial question of federal law. On December 23, 2002, plaintiffs filed their *Motion To Remand* (Doc. # 7). Plaintiffs argue that removal is improper because

the FCA does not preempt state law claims and because their petition does not raise a substantial question of federal law. Plaintiffs also request costs and expenses under 28 U.S.C § 1447(C).

### *Analysis*

### I. *Federal Jurisdiction*

 Federal district courts have original federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see* 28 U.S.C. § 1441(b). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff[s'] properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Plaintiffs are the "master of the[ir] claim" and "may avoid federal jurisdiction by exclusive reliance on state law." *Id.; see Garley v. Sandia Corp.,* 236 F.3d 1200, 1207 (10th Cir.2001). To support federal jurisdiction, Sprint invokes two independent corollaries to the well-pleaded complaint rule: the "complete preemption" doctrine and the "substantial federal question" doctrine.

### A. *Complete Preemption*

 The United States Supreme Court has acknowledged the "complete preemption doctrine" as an independent corollary to the well-pleaded complaint rule. *Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425. "[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd. of State of Ca. v. Constr. Laborers Vacation Trust for So. Ca.,* 463 U.S. 1, 24, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Sprint maintains that the Federal Communications Act ("FCA") completely preempts plaintiffs'

state law claims, so as to convert their state law petition to one stating a federal claim for purposes of removal. Sprint relies upon 47 U.S.C. § 332, as amended by the Telecommunications Act of 1996, which provides that:

> no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile service.

47 U.S.C. § 332(c)(3)(A).

 In analyzing Sprint's complete preemption argument, the Court must distinguish between ordinary conflict preemption and complete preemption. Under ordinary conflict preemption, state laws that conflict with federal laws are preempted, and defendants assert preemption as a federal defense to plaintiffs' suit. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). A defense which implicates a federal question is not considered part of plaintiffs' properly pleaded complaint. *Id.; see also Warner Bros. Records, Inc. v. R.A. Ridges Distrib. Co. Inc.,* 475 F.2d 262, 262 (10th Cir.1973). Accordingly, "a case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Board,* 463 U.S. at 14, 103 S.Ct. 2841; *see Garley,* 236 F.3d at 1207. In contrast, the complete preemption doctrine operates as follows:

> On occasion, ... the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well pleaded complaint rule." *Metropolitan Life Insurance Co.,* [481 U.S.] at 65, 107 S.Ct. at 1547. Once an area of state law has

been completely preempted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *See Franchise Tax Board,* [ ] 463 U.S., at 24, 103 S.Ct., at 2854.

*Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425 (footnote omitted). Complete preemption is a narrow doctrine. *See, e.g., Marcus v. AT&T Corp.,* 138 F.3d 46, 54 (2d Cir.1998); *see generally* 14B Wright & Miller § 3722.1, at 517 (courts have limited application of the complete preemption doctrine because of the "obvious federalism implications," applying it principally to actions under the LMRA and ERISA.)

The FCA expressly preempts any state regulation of rates or market entry into telecommunications. *See* 47 U.S.C. § 332(c)(3)(A). The FCA includes a savings clause, which provides that "[n]othing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414.

Sprint correctly points out that the Seventh Circuit has ruled that Congress has specifically found complete preemption of claims that involve the "entry of or rates charged by any commercial mobile service," *Bastien v. AT&T Wireless Servs., Inc.,* 205 F.3d 983, 986–87 (7th Cir.2000), and therefore such claims necessarily "arise under" federal law for purposes of removal. *Defendant Sprint Spectrum., L.P.'s Memorandum In Opposition To Motion To Remand* (Doc. # 12) filed January 13, 2002 at 5. Many other courts, however, have found that Section 332 and related provisions do not serve as a basis for removal under the complete preemption doctrine.[1] *See, e.g., TPS Utilicom Servs., Inc. v. AT & T Corp.,* 223 F.Supp.2d 1089, 1096 (C.D.Cal.2002); *Bell Atlantic Mobile, Inc. v. Zoning Bd. of Butler Township,* 138 F.Supp.2d 668, 676–77 (W.D.Pa.2001) (§ 332(c)(7) does not support complete preemption); *Bryceland v. AT & T Corp.,* 122 F.Supp.2d 703, 706–10 (N.D.Tex.2000) (§ 332 does not support complete preemption); *Aronson v. Sprint Spectrum, L.P.,* 90 F.Supp.2d 662, 664–69 (W.D.Pa.2000) (same); *Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc.,* 958 F.Supp. 947, 952–58 (D.Del.1997) (same). These courts point to the lack of evidence that Congress intended any FCA provisions, including the preemptive provisions of Section 332, to permit removal.[2]

---

1. The majority of courts have determined that in the context of wire-line communications— the FCA does not serve as a basis for removal under the complete preemption doctrine. *In re Wireless Tele. Radio Frequency Emission Prods. Liability Litig.,* 216 F.Supp.2d 474, 496 (D.Md.2002) (citing *Smith v. GTE Corp.,* 236 F.3d 1292, 1312–13 (11th Cir.2001) (FCA does not provide basis for removal pursuant to complete preemption doctrine); *Marcus v. AT&T Corp.,* 138 F.3d 46, 53 (2d Cir.1998) (same); *Braco v. MCI Worldcom Comms., Inc.,* 138 F.Supp.2d 1260, 1268–69 (C.D.Cal. 2001) (same); *Crump v. WorldCom, Inc.,* 128 F.Supp.2d 549, 556–60 (W.D.Tenn.2001) (comprehensive nature of FCA regulatory scheme does not support complete preemption)).

2. Sprint asserts that both the Supreme Court and the Tenth Circuit Court of Appeals have applied "complete Communications Act preemption" to state law claims. *Defendant Sprint Spectrum., L.P.'s Memorandum In Opposition To Motion To Remand* (Doc. # 12) filed January 13, 2002 at 8, citing *AT&T v. Cent. Office Tele.,* 524 U.S. at 223–28, 118 S.Ct. 1956 (addressing claims of "inadequate service"), and *Southwestern Bell Wireless v. Johnson County Bd. of Commrs.,* 199 F.3d 1185 (10th Cir.1999) (regulation of wireless carriers' radio transmissions). *Central Office,* however, dealt with the filed rate doctrine under 47 U.S.C. § 203(a). *See* 524 U.S. at 223–24, 118 S.Ct. 1956 (Communications Act requiring tariff to show charges, classifications, practices and regulations affecting such charges preempted state law tort and contract

Sprint argues that Section 332 completely preempts plaintiffs' claims because an order that Sprint disgorge funds it received for directory assistance would constitute regulation of "the rates charged" by a commercial mobile service—an act which Section 332(c)(3)(A) specifically prohibits. Plaintiffs respond that their state law claims address only the method of billing and do not touch on the "rates charged." Further, the FCA savings clause provides that "[n]othing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414. This type of savings clause, which contemplates application of state law and exercise of state court jurisdiction, indicates that Congress did not intend to "replicate the unique preemptive force of the LMRA and ERISA." *Smith*, 236 F.3d at 1313; *see also Geier v. Am. Honda Mtr. Co., Inc.*, 529 U.S. 861, 868, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) ("savings clause assumes that there are some significant number of common-law liability cases to save."). By allowing states to regulate "other terms and conditions of commercial mobile services," Section 332(c)(3)suggests that Congress did not intend complete preemption. *Bryceland v. AT & T Corp.*, 122 F.Supp.2d 703, 707 n. 3 (N.D.Tex.2000). Further, according to the House Committee that considered this legislation, "terms and conditions" includes:

> [S]uch matters as customer billing information and practices and billing disputes and other consumer protections matters, facilities siting issues (e.g.zoning); transfers of control; the bundling of services and equipment; and the requirement that carriers make capacity available on a wholesale basis or such other matters as fall within a state's lawful authority. This list is intended to be illustrative only and not meant to preclude other matters generally understood to fall under "terms and conditions".

H.R.Rep. No. 103–111, 103d Cong., 1st Sess. 211, 261, reprinted in 1993 U.S.C.C.A.N. 378, 588.

 This Court acknowledges that in *Bastien*, the Seventh Circuit found that Section 332(c)(3) provided removal preemption for plaintiff's state law claims of breach of contract and consumer fraud. *See* 205 F.3d at 987 (court had removal jurisdiction over plaintiff's claim based on high number of dropped calls). The Seventh Circuit did not analyze removal intent, however, as mandated by the Supreme Court. *See TPS Utilicom Servs., Inc. v. AT & T Corp.*, 223 F.Supp.2d 1089 (C.D.Cal.2002) (majority of district courts outside Seventh Circuit have found no complete preemption under analysis of congressional intent); *see also Metropolitan Life*, 481 U.S. at 65–66, 107 S.Ct. 1542 (in evaluating removal under doctrine of complete preemption, "touchstone" of inquiry is intent of Congress). Based on the intent of Congress, as set forth in the Section 414 savings clause, as well as in Section 332 itself, this Court finds that Sprint has not established that this Court has jurisdiction over plaintiffs' claims under the complete preemption doctrine.

## B. *Substantial Federal Question*

 Even if state law creates plaintiffs' causes of action, the case may still "arise under" the laws of the United States if a well-pleaded complaint establishes that plaintiffs' "right to relief under state law requires resolution of a substantial question of federal law." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164,

---

claims that challenged rate). *Johnson County* held that the Telecommunications Act and related regulations preempted county regulation of radio frequency interference.

118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (quoting *Franchise Tax Bd. of State Of Cal. v. Constr. Laborers Vacation Trust For S. Cal.*, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)) (case arises under federal law when federal law creates cause of action or plaintiff's right to relief necessarily depends on resolution of substantial question of federal law). In such a case, federal jurisdiction is based on "the presence of a federal issue in a state-cause of action." *Merrell Dow Pharms., Inc., v. Thompson*, 478 U.S. 804, 810, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

> While at first blush that characterization appears straightforward, the Supreme Court has acknowledged that applying the concept requires "principled, pragmatic distinctions" and "careful judgments about the exercise of federal judicial power." *Id.* at 813–14[, 106 S.Ct. 3229] Only where the "federal interest at stake" is substantial will federal jurisdiction lie. *Id.* at 814 n. 12[, 106 S.Ct. 3229], In short, the Court's teachings instruct lower courts to apply the substantial federal question doctrine with caution. *See, e.g., Almond v. Capital Properties, Inc.*, 212 F.3d 20, 23 (1st Cir.2000) (noting "[p]erhaps the best one could say is that [the substantial federal question doctrine] endures in principle but should be applied with caution and various qualifications").

*In re Universal Serv. Fund Tele. Billing Practices Litig.*, 247 F.Supp.2d 1215, 1224 (D.Kan.2002) (some internal citations and footnote omitted).

 Sprint appears to question whether removal is proper under the substantial federal question doctrine. The Tenth Circuit applies a three step analysis in determining whether a case includes a substantial federal question: (1) whether federal law governs the issues implicated: (2) whether the issues raise substantial questions of federal law that the court must

resolve; and (3) whether the applicable statute creates a private cause of action. *See Rice v. Office of Servicemembers' Group Life Ins.*, 260 F.3d 1240, 1245 (10th Cir.2001) (explaining that state law cause of action arises under federal law if "its resolution ... necessarily turn[s] on a substantial question of federal law, and that federal law in turn ... create[s] a private right of action").

As for the first step, the Court agrees that if this case dealt with the propriety of the rate charged for services, it would be governed by federal law. *See* 47 U.S.C. § 332 C(3)(a) ("no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service"); 47 U.S.C. § 207 (claim for damages under FCA must be brought in federal court or before Federal Communications Commission). Plaintiffs, however, do not seek to litigate the amount of the rate. Rather, plaintiffs allege that defendants violated the KUTCPA and engaged in consumer fraud by using deceptive and misleading language on its bills. To recover on its KUTCPA claims under K.S.A. §§ 50–626 and 50–627, plaintiffs must prove that Sprint willfully failed to state or concealed a material fact, willfully used an ambiguity as to a material fact, or otherwise engaged in a deceptive act or practice in connection with its billing of long distance charges. Although Sprint asserts that plaintiffs challenge the rate charged for directory assistance, the claim is based on the alleged *misrepresentation* of the amount charged, "not on the wrongfulness of the charge itself." *In re Universal Serv. Fund*, 247 F.Supp.2d 1215, 1225 (D.Kan.2002) (unfair competition claims were tied to claim of alleged misrepresentation and therefore did not challenge lawfulness of charges controlled by federal law; no substantial federal question). Reference to federal law is not required to determine this state law ques-

tion. *See id.* (citing, *e.g.*, *Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc.*, 958 F.Supp. 947 (D.Del.1997) (claims that carrier did not accurately disclose billing practice not governed by FCA); *Bauchelle v. AT & T*, 989 F.Supp. 636 (D.N.J. 1997) (sections 201, 202 and 203 of the FCA do not apply to state law challenges to carrier's advertising and promotion practices); *In re Comcast Cellular Telecomm., Lit.*, 949 F.Supp. 1193 (E.D.Pa. 1996) (claims that carrier failed to accurately disclose billing practice not governed by FCA); *Weinberg v. Sprint Corp.*, 165 F.R.D. 431 (D.N.J.1996) (same)).

Finally, although violations of Section 202 of the FCA are actionable under federal law, and Section 207 allows an injured person to bring suit in federal court, plaintiffs do not claim a violation of the FCA. The substantial federal question doctrine does not support removal of plaintiff's claims under the KUTCPA.

■ Sprint asks to supplement its opposition to plaintiffs' motion to remand, citing plaintiffs' discovery request for production of detailed information about Sprint's rates. Sprint asserts that this discovery establishes that plaintiffs' claims directly involve the rates that Sprint charges, and thus conclusively demonstrates that Section 332 of the FCA preempts plaintiffs' claims. Sprint cites no authority for the proposition that plaintiffs' discovery requests define the claims which they set forth on the face of the complaint. The Court therefore finds that Sprint's motion to file a second supplemental memorandum should be overruled.

## II. *Attorney Fees*

■ Plaintiffs seek an award of fees under 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Such an award is within the Court's discretion. *See Suder v. Blue Circle, Inc.*, 116 F.3d 1351, 1352 (10th Cir.1997); *Amundson & Assoc. Art Studio, Ltd. v. Nat'l Council on Compensation Ins., Inc.*, 977 F.Supp. 1116, 1128 (D.Kan.1997). Because the Court has found that removal was improper, it has discretion to award fees; the Court does not need to find that defendants acted in bad faith. *Suder*, 116 F.3d at 1352. The Court awards fees in this case to compensate plaintiffs for the time and resources expended in remedying Sprint's improper removal. *See Moore v. Kaiser Found. Hosps. Inc.*, 765 F.Supp. 1464, 1466 (N.D.Cal.1991).

**IT IS THEREFORE ORDERED** that *Defendant Sprint Spectrum LP's Motion For Leave To File Second Supplemental Memorandum In Opposition to Remand* (Doc. # 23) filed April 16, 2003 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that *Plaintiffs' Motion To Remand* (Doc. # 7) filed December 23, 2002 be and hereby is **SUSTAINED.** This case is **REMANDED** to the District Court of Wyandotte County, Kansas. The Clerk is directed to **REMAND** the case to the district court of Wyandotte County, Kansas. The Court orders the parties to comply with D. Kan. Rule 54.1 in determining the proper award of costs and expenses.